UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| LARRY J. LEAF, individually and as personal representative of the Estate of JOHN PATRICK LEAF, Deceased, MARTHA A. LEAF, and CHARMAYNE E. THOMAS, minor child of JOHN PATRICK LEAF, by her next friend, LARRY LEAF,<br>　　　　Plaintiffs,<br><br>　　vs.<br><br>MARION COUNTY SHERIFF JACK COTTEY, in his official capacity, DEPUTY RONALD SHELNUTT, in his individual capacity, and DEPUTY ANDREW JACOBS, in his individual capacity,<br>　　　　Defendants. | 1:02-cv-433-LJM-VSS |

## ORDER ON PLAINTIFFS' MOTION FOR SANCTIONS

This matter is before the Court on the motion of the plaintiffs, Larry J. Leaf, individually and as personal representative of the Estate of John Patrick Leaf, Martha A. Leaf and Charmayne E. Thomas, by her next friend Larry Leaf (collectively, "Plaintiffs"), for sanctions against the defendants, Marion County Sheriff Jack Cottey, in his official capacity, and Deputy Ronald Shelnutt, in his individual capacity (collectively, "Defendants"), for failing to produce documents in discovery. Having read the parties' briefs and upon hearing oral argument on this matter, the Court finds the motion is now ripe for ruling. For the reasons explained herein, Plaintiffs' motion is **GRANTED in part and DENIED in part**.

## I. BACKGROUND

Plaintiffs initially served discovery requests on Defendants on September 12, 2002. One category of information Plaintiffs sought was formal and informal complaints against Deputy Shelnutt, any investigations into alleged misconduct by Deputy Shelnutt and any disciplinary action taken against him. Plaintiffs Larry J. Leaf's Interrogatory No. 5 to Sheriff Jack Cottey requests:

> For any complaint, formal or informal, filed with the MCSD or its agents alleging misconduct on the part of Officer Ronald Shelnutt, state:
>
> (a) the name, address and telephone number of the complainant;
> (b) the date of the complaint;
> (c) the substance of the complaint; and
> (d) the ultimate disposition of the complaint, including any discipline imposed on Officer Shelnutt.

Plaintiffs also sought:

> All information contained in the files or computers maintained by the MCSD Internal Affairs Department, or any other department or division of the MCSD, concerning any formal or informal complaints made against Officer[] Ronald Shelnutt . . . including but not limited to information which is retrievable by computer codes.

Plaintiffs' Request No. 11 for Production of Documents to Jack Cottey. Finally, Plaintiffs sought all information, wheresoever maintained, regarding any formal or informal complaints of excessive force, unlawful entry, unlawful search, or unlawful seizure against any MCSD officer. *See* Plaintiffs' Request Nos. 22-25 for Production of Documents to Jack Cottey.

Defendants responded with a variety of objections, including that production would be "unduly burdensome" because counsel would have to search each officer's individual personnel file. Defendant Jack Cottey's Response to Plaintiffs' Request for Production of Documents. Plaintiffs sought an order compelling production. (Docket Nos. 33, 34) In response to the motion to compel, Defendants filed the affidavit of Deputy Chief Eva Talley-Sanders. Talley-Sanders testified that

2

"The MCSD does not maintain lists of complaints or discipline against deputies, and does not maintain separate records listing complaints or discipline by type or category. . . . The only records of complaints or discipline against deputies are those contained in individual personnel files." Ex. 1 to Pltfs' Memo in Support, Declaration of Deputy Chief Eva Talley-Sanders ("Talley-Sanders Decl.") at ¶¶ 5-6. The Magistrate Judge granted Plaintiffs' motion to compel, and Defendants moved this Court to reconsider the Magistrate Judge's order. This Court refused. Defendants initially produced documents in July, 2003.

Plaintiffs received approximately 12,000 documents from the MSCD Internal Affairs division relating to complaints against officers. In an attempt to support their claim against the Sheriff for a pattern and practice of deliberate indifference toward officer misconduct, Plaintiffs spent considerable time and resources searched the Internal Affairs documents. Ultimately, Plaintiffs were unable to produce evidence sufficient to support that claim, which this Court dismissed by summary judgment on January 6, 2004.

In May, 2005, Defendants responded to Plaintiffs' request for supplemental discovery responses by producing disciplinary investigation documents relating to a June, 2004, incident involving Deputy Shelnutt (the "Lusby Incident"). Plaintiffs requested further supplementation on June 7 and 28, 2005. Exs. 1 & 4 to Pltfs' Mot. for Sanctions. Defendants produced additional discovery on June 27 and 30, 2005, and July 28, 2005. *See* Exs. 3, 5, 8 to Pltfs' Mot. for Sanctions.

To follow up on the Lusby Incident, Plaintiffs sought to depose Deputy Shelnutt and Detective Herman Jackson, who investigated the incident. Defendants initially refused to agree to the depositions, but relented after Plaintiffs filed a motion to compel. (Docket # 22) At his deposition, Deputy Shelnutt denied having signed any deputy Bill of Rights forms other than for the

3

Leaf shooting, the Lusby Incident, and perhaps one other incident before the Leaf shooting. Ex. 2 to Pltfs' Reply in Support of Motion, July 26, 2005, Deposition of Ronald Shelnutt at 13. When first asked whether he knew of any other complaints against him, Deputy Shelnutt responded that he did not. *Id.* at 14. Plaintiffs apparently learned on their own of a complaint by the Deputy Chief of the Fishers Police Department on June 20, 2005 (the "Fishers Incident"). After Plaintiffs' counsel specifically asked Deputy Shelnutt about the Fishers Incident, he stated that a complaint had been filed against him related to that incident. *Id.* at 40. Deputy Shelnutt has submitted a declaration under oath that he "initially understood this question as referring to complaints of excessive force or citizen complaints – not complaints made by other police departments." Ex. F to Defs' Response, Declaration of Corporal Ronald Shelnutt ("Shelnutt Decl.") ¶ 5.

At Detective Jackson's deposition on July 27, 2005, Plaintiffs learned for the first time about the existence of a card for each deputy listing all citizen complaints filed against that officer. Ex. 9 to Pltfs' Mot. for Sanctions, Deposition of Herman C. Jackson ("Jackson Dep.") at 25. After each complaint and Internal Affairs investigation, the administrative staff member notes the incident on the particular deputy's index card. *Id.* at 71-72. The index card is kept by the administrative staff of the Internal Affairs division, to serve as an aid for those staff members. Ex. D. to Defs' Response, Declaration of Lt. Patrick Tompkins ("Tompkins Decl.") ¶ 7.

On July 28, 2005, Plaintiffs received a copy of the index card for Deputy Shelnutt as well as another document listing complaints against him. Ex. 10 to Pltfs' Mot. for Sanctions. These new documents revealed two additional complaints against Deputy Shelnutt that took place prior to Defendants' July, 2003, document production that previously had not been disclosed, the "Roche Diagnostics Incident" and the "Adkisson Incident." Plaintiffs also discovered that Deputy Shelnutt

4

was the subject of a citizen complaint, other than the Fishers Incident, about which Defendants had not produced supplemental discovery. Deputy Shelnutt had signed a Deputy Bill of Rights form for the Fishers Incident on July 15, 2005. Further, the documents Defendants produced on July 28, 2005, revealed other internal investigations and discipline for Deputy Shelnutt, including an order to submit to a psychological fitness for duty exam. *See* Ex. 14 to Pltfs' Mot. for Sanctions.

On April 28, 2003, the Court ordered production of Deputy Shelnutt's psychological examinations. (Docket # 60) Apparently, Deputy Shelnutt underwent a psychological exam on December 29, 2004, that was not revealed to Plaintiffs until July 28, 2005. Psychological evaluations are kept in separate locked files maintained in the Human Resource Section of MCSD. Ex. G. to Defs' Response, Declaration of Major Bob Warren ("Warren Decl.") ¶¶ 3, 5.

Information regarding officer disciplinary incidents can end up in any one of many locations within MCSD. When citizen complaints are received by MCSD, they sometimes become Internal Affairs matters. Sometimes final disciplinary decisions are put in a deputy's personnel file, but not his division-level file. Sometimes complaints are recorded in deputy's division-level file, but not his personnel file.

When a party seeks discovery from MCSD, MCSD's attorneys contact the "legal liaison" for MCSD. The legal liaison then contacts each department that holds files on the individual deputies. The legal liaison then passes on the information to the MCSD attorney. Apparently, that was done in this case.

## II. STANDARD

Federal Rule of Civil Procedure 37(b) states, in pertinent part:

5

> If a party . . . fails to obey an order to provide or permit discovery, . . . the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:
>
> (A)     An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order.
>
> (B)     An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters into evidence; [or]
>
> (C)     An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party . . . ."

Fed. R. Civ. P. 37(b). Rule 37(c)(1) states that sanctions also are appropriate where "a party . . . without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2)." Fed. R. Civ. P. 37(c)(1). Appropriate sanctions for violating Rule 37(c) include those authorized under Rule 37(b)(2)(A), (B), and (C). *Id.*

Generally, Rule 37 sanctions are appropriate where a party displays wilfulness, bad faith or fault. *Langley v. Union Elec. Co.*, 107 F.3d 510, 514 (7th Cir. 1997) (citing *Phillips Med. Sys. Int'l, B.V. v. Bruetman*, 982 F.2d 211, 214 (7th Cir. 1992)). Fault is "'unconcerned with the non-complying party's subjective motivation, but rather only describe[s] the reasonableness of the conduct – or lack thereof – which eventually culminated in the violation.'" *Langley*, 107 F.3d at 514 (quoting *Marrocco v. General Motors Corp.*, 966 F.2d 220, 224 (7th Cir. 1992)). Poor judgment on the part of the non-complying party has been held sufficient to warrant sanctions under Rule 37. *See id.* (citing *Marrocco*, 966 F.2d at 224). Any sanction imposed pursuant to Rule 37 "'must be proportionate to the circumstances surrounding the failure to comply with discovery.'" *Id.* (quoting

6

*Crown Life Ins.*, 995 F.2d at 1382; citing *Newman v. Metro. Pier & Expo. Auth.*, 962 F.2d 589, 591 (7th Cir. 1992)).

## III.  DISCUSSION

### A.  FAILURE TO PRODUCE

Sheriff Cottey cannot dispute that he failed to timely produce documents responsive to Plaintiffs' discovery requests.  Further, the Sheriff failed to update his discovery responses as new information became available.  The Sheriff has not denied that he failed to timely produce information, but instead offers a variety of excuses.

First, the Sheriff downplays the significance of Talley-Sanders' Declaration, stating that she did not speak for the Internal Affairs division.  Yet, Talley-Sanders testified that MCSD did not maintain the records Plaintiffs had requested, and that "[t] *only* records of complaints or discipline against deputies are those contained in individual personnel files."  Talley-Sanders Decl. ¶¶ 5-6 (emphasis added).  This apparently is false.  Further, even if the Court were to completely discard Talley-Sanders' statements, the Plaintiffs should be entitled to assume that if responsive documents have not been produced it is because they do not exist.

Second, Defendants' counsel asserts that Plaintiffs have failed to demonstrate that counsel intentionally failed to reveal the existence of the newly discovered complaints against Deputy Shelnutt.  Plaintiffs do not bear the burden of demonstrating Defendants' counsel wilfully hid documents.  Rather, Plaintiffs need only demonstrated that the Sheriff is at fault for the failure to fully respond to discovery because his failure was not reasonable.  See *Langley*, 107 F.3d at 514.

Third, Defendants have argued that the Sheriff's failure to produce documents was an

inadvertent and accidental result of (1) the various locations within MCSD of responsive documents, and (2) weak communication between MCSD, the legal liaison and Defendants' counsel. When a party responds to discovery, it has the obligation to search for and investigate the location of all responsive documents within its domain, and to update discovery responses in a reasonably timely manner. A party cannot create a system of storing or retaining documents that is so disjointed or confusing that it makes discovery difficult or impossible, and then hide behind that system as a defense for failing to produce documents.

When Plaintiffs first requested information about all complaints against Deputy Shelnutt and other MCSD officers, the Sheriff, his lawyers, the legal liaison, or any other designated person should have searched in all locations of MCSD for responsive documents and should have asked each person who keeps files regarding deputies, regardless of what division that person is in, to search his or her files for responsive documents. This includes administrative staff. Similarly, a communications system should have been in place to update discovery as responsive information became available. If a routine system is not in place for this to occur each time the Sheriff or MCSD responds to discovery requests, the fault lies with the Sheriff and his counsel. Plaintiffs should not have had to bear the burden of the Sheriff's accidental failure to adequately locate documents within his office.

Finally, Defendants argue that they produced volumes of information, including the approximately 12,000 Internal Affairs documents; thus, according to Defendants, the failure to produce the index card listing complaints against Deputy Shelnutt and a few other documents does not show an intent to hide documents. This ignores the fact that the index card system would have saved Plaintiffs a large amount of time and money when it searched the Internal Affairs documents

8

by providing a road map. Moreover, it matters not how many thousands of documents Defendants produce if they nonetheless fail to fully respond and to timely update their responses.

### B. APPROPRIATE SANCTION

Because the documents and information at issue relate to Plaintiffs' state law claim of negligent hiring, retention and supervision, Plaintiffs seek a default judgment on that claim. In the alternative, Plaintiffs seek an evidentiary ruling that all of the newly-discovered evidence involving Deputy Shelnutt may be introduced at trial.

Plaintiffs claim they have been prejudiced by Defendants' failure to produce discovery in part because Plaintiffs did not have all the information about Deputy Shelnutt's alleged misconduct at the time they deposed him and his supervisors. Further, Plaintiffs spent "hundreds of hours of work" sorting through Internal Affairs files trying to find MCSD deputies that had been the subject of many complaints, but not disciplined accordingly. Because the Internal Affairs documents were not categorized by deputy or type of complaint, Plaintiffs created their own database and cross-referenced all the documents. If Plaintiffs had had the index cards that listed citizen complaints for each deputy, much of that time would have been saved.

In addition to the documents Defendants have produced belatedly, Plaintiffs still await other documents. For example, Defendants have not produced any documents relating to the high speed pursuit in which Deputy Shelnutt was involved on August 3, 2005. Defendants' counsel have informed Plaintiffs that a citizen complaint was filed in relation to that incident, but have not produced it or any related documents.

The trial of this case is set to begin in January, 2006. Plaintiffs have ample time to redepose

any witnesses, including Deputy Shelnutt, about the new discovery. Although Plaintiffs have lost time and resources in their quest for full disclosure, they will not be prejudiced at trial. Further, the Court will not grant Plaintiffs' request to allow information about all of the post-shooting incidents into evidence. The Court has not made a ruling on the admissibility of this evidence, which is the subject of at least one pending motion in limine. To allow Plaintiffs' to present potentially irrelevant and highly prejudicial evidence to the jury would be to tilt the scales too far relative to the prejudice Plaintiffs have and will suffer.

Instead, the Sheriff is **ORDERED** to pay Plaintiffs all of their attorneys' fees and costs incurred in obtaining this evidence, including, but not limited to:

(1) Plaintiffs' review of the approximately 12,000 Internal Affairs documents produced in 2003;

(2) Plaintiffs' motion to compel the supplemental deposition of Deputy Shelnutt and the Deposition of Detective Jackson;

(3) Plaintiffs' litigation of this Motion for Sanctions and in defense of Defendants' Motion to Strike (Docket Nos. 81, 82);

(4) Any additional discovery necessary to follow up on the disciplinary incidents that were revealed to Plaintiffs following Deputy Shelnutt's supplemental deposition on July 26, 2005.

It appears to the Court that Plaintiffs' difficulty in obtaining discovery has been caused by the Sheriff and MCSD, not Deputy Shelnutt. Although Deputy Shelnutt may not have been immediately forthcoming in his most recent deposition, Plaintiffs have not shown the Court any

evidence that Deputy Shelnutt is at fault for any violations of Rule 26. Thus, the sanctions ordered today are against the Sheriff only.

### IV. <u>CONCLUSION</u>

As concluded above, Plaintiffs' motion for sanctions against Sheriff Jack Cottey is **GRANTED** and Plaintiffs' motion for sanctions against Deputy Shelnutt is **DENIED**. Plaintiffs' request for default judgment or an evidentiary ruling is **DENIED**. The Sheriff shall pay all of Plaintiffs' costs and attorney's fees associated with obtaining evidence of formal or informal complaints against Deputy Shelnutt, internal investigations against Deputy Shelnutt, and any disciplinary matters involving Deputy Shelnutt. Plaintiffs shall file with the Court a statement of relevant fees and costs incurred up to the date of this Order no later than September 23, 2005.

IT IS SO ORDERED this 8th day of September, 2005.

_____
LARRY J. McKINNEY, CHIEF JUDGE
United States District Court
Southern District of Indiana

Distribution attached.

Distributed to:

Kathleen Ann DeLaney
DELANEY & DELANEY LLC
kathleen@delaneylaw.net

William A. Hasbrook
RUCKELSHAUS ROLAND KAUTZMAN BLACKWELL & HASBROOK
wah@rucklaw.com

Laurel S. Judkins
OFFICE OF CORPORATION COUNSEL
ljudkins@indygov.org

John F. Kautzman
RUCKELSHAUS ROLAND KAUTZMAN BLACKWELL & HASBROOK
jfk@rucklaw.com

Andrew J. Mallon
OFFICE OF CORPORATION COUNSEL
amallon@indygov.org

Anthony W. Overholt
LOCKE REYNOLDS LLP
aoverholt@locke.com

Stephen M. Wagner
WAGNER REESE & CROSSEN LLP
swagner@injuryattorneys.com