UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION

| | | |
|---|---|---|
| LARRY J. LEAF, *et al.*, | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | 1:02-cv-0433-LJM-VSS |
| | ) | |
| MARION COUNTY SHERIFF | ) | |
| JACK COTTEY, *et al.*, | ) | |
| Defendants. | ) | |

## ORDER ON DEFENDANTS'
## MOTION FOR EVIDENCE SPOLIATION INSTRUCTION

This cause is now before the Court on defendants', Marion County Sheriff Jack Cottey, in

his official capacity, and Deputy Ronald Shelnutt ("Shelnutt"), in his individual capacity

(collectively, "Defendants"), Motion for Evidence Spoliation Instruction.  Defendants contend that

plaintiffs, Larry J. Leaf, individually and as personal representative of the Estate of John Patrick Leaf

(the "Estate"), Deceased, Martha A. Leaf, and Charmayne E. Thomas, minor child of John Patrick

Leaf, by her next friend, Larry J. Leaf (collectively, "Plaintiffs"), have put at issue the condition of

the bedding on the decedent's, John Patrick Leaf ("Mr. Leaf"), bed on the night of his death because

they intend to present the hypothesis to the jury that Mr. Leaf was shot while either sitting on or

being close to the bed.  The bedding was in the control of Plaintiffs after the Marion County Sheriff's

Department ("MCSD") had conducted its investigation into the shooting.  Even after being advised

by counsel, Defendants contend, Plaintiffs destroyed the bedding, which has rendered it impossible

for the Defendants to make an analysis of the bedding to refute Plaintiffs' hypothesis.  Defendants

argue that under these facts, a spoliation instruction is proper.  In other words, Defendants ask the

Court to give the jury an instruction that would tell it to infer from Plaintiffs' destruction of the

bedding that the evidence would have been unfavorable to Plaintiffs' case.  In the alternative, Defendants ask the Court to give the jury an instruction that would allow it to decide whether or not Plaintiffs' destruction of the bedding should give rise to a negative inference.

Plaintiffs argue that the crime lab associated with the MCSD, the Indianapolis Forensic Services Agency, took control of Mr. Leaf's apartment on the night of the incident, May 5, 2001, and decided what evidence to collect and what photographs to take.  MCSD did not take the bedding, or the bedside table and telephone thereon, which were splattered with blood.  Plaintiffs contend that as the investigative authority, MCSD had the responsibility to preserve the bedding, that the bedding was not intentionally destroyed, as required for the issuance of a spoliation instruction, and that there is other clear evidence that Mr. Leaf was "most certainly shot in close proximity to the bed," Pls.' Br. at 2, therefore, a spoliation instruction is improper.

After a review of the evidence, the law and the parties' arguments, the Court finds that Defendants' motion should be **DENIED**.

## I. <u>BACKGROUND</u>

After the May 5, 2001, incident in which Mr. Leaf was shot, the MCSD took control of Mr. Leaf's apartment for its investigation.  The MCSD finished its investigation on May 11, 2001, at which time it turned control of the apartment over to the apartment complex, whose representatives entered the apartment, inspected it, then changed the locks on the doors.  On May 15, 2001, Plaintiffs were granted access to the apartment, and an investigator photographed what remained at the scene of the shooting.

After the apartment was photographed, Mr. Leaf's parents ("Leaf's parents") removed their

son's property from the apartment, including the sheets on the bed.

During his deposition on March 10, 2003, Larry Leaf, Mr. Leaf's father ("Leaf's father"), testified that he "thought" he was still in possession of the sheets from Mr. Leaf's bed and that they had not been washed.  L. Leaf, Mar. 10, 2003, Dep. at 73-74.  In addition, Leaf's father testified that the blood-splattered bedside table and telephone had been "scrapped."  *Id.* at 74.  Moreover, Leaf's father testified that Steve Wagner, an attorney, handled the sorting of Mr. Leaf's belongings.  *Id.* at 74-75.  Similarly, Mr. Leaf's sister, Amanda Leaf ("Leaf's sister"), testified that Mr. Leaf's bedding was in the apartment when the Leaf family went there to retrieve Mr. Leaf's belongings.  A. Leaf Dep. at 72.

In Plaintiffs' response to Defendants' third request for production of documents and things dated May 29, 2003, Plaintiffs indicate that although the bedside table and telephone were not available for inspection, the "bed and all bed linens" were available for inspection.  Defs.' Exh. D.

Defendants again requested the bedding in October 2005, in an attempt to rebut Plaintiffs' expert's criticism of the investigation of the shooting.  By letter dated November 16, 2005, Plaintiffs' counsel informed Defendants: "My clients advised that after the police investigation was completed, they removed their son's property from the apartment, including the bedding.  They kept certain personal items from the apartment, but discarded other items including the bedding."  Defs. Exh. E.

On or about November 11, 2005, Plaintiffs produced to Defendants a "demonstrative exhibit" that illustrates how Plaintiffs plan to argue that Shelnutt shot Mr. Leaf.  The exhibit indicates that Plaintiffs intend to argue that Shelnutt shot Mr. Leaf as Mr. Leaf was getting up from his bed.

The individual assigned to collect evidence in Mr. Leaf's apartment on the night of the shooting, Michael Estep ("Estep"), in his deposition testified that:

Q.  Did you notice whether there was any blood on the bedclothes?

A.  I don't recall if there was.  I think there was, but I'm not real sure.

Estep. Dep. at 44-45.  Estep also prepared a diagram of the scene in which he depicts the doorway

to the bathroom, where Defendants contend Mr. Leaf was for at least one shot, only five feet from

the bed.  Pls.' Exh. 2, Estep Dep. Exh. 4, Scene Diagram & Estep Dep. at 125.

There is no dispute that the bedside table and phone sitting thereon had blood splatter on

them.  Exh. 1, Photo of Bedside Table, Phone.  Defendants do not seek a spoliation instruction based

on the absence of the bedside table or the phone.

## II. __STANDARD__

The Court finds that federal law controls the evidentiary question of spoliation.  Generally,

the doctrine arises out of the Court's authority to sanction a party for misconduct prior to trial.  *See*

*Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991).  The measure of the sanction imposed, if any,

should be proportionate to the conduct and the circumstances justifying sanctions.  *Id.* at 44-45.

In the Seventh Circuit, "bad faith destruction of [evidence] relevant to proof of an issue at

trial gives rise to a strong inference that production of [evidence] would have been unfavorable to

the party responsible for its destruction."  *Crabtree v. Nat'l Steel Corp.*, 261 F.3d 715, 721 (7th Cir.

2001).  In this context, "'bad faith' means destruction for the purpose of hiding adverse information."

*Mathis v. John Morden Buick, Inc.*, 136 F.3d 1153, 1155 (7th Cir.), *cert. denied* 525 U.S. 898 (1998).

## III. <u>DISCUSSION</u>

Defendants contend that because the bedding was in Plaintiffs' possession and control when it was destroyed, and they had at least anticipated litigation by the time the bedding was destroyed, Plaintiffs intended to dispose of the bedding. Because they had such intent, Defendants argue, and the destruction was at least extraordinarily or extremely negligent, the Court should sanction Plaintiffs by instructing the jury that Plaintiffs' theory is incorrect that Mr. Leaf was shot while getting up from his bed.

Plaintiffs argue that they did not destroy the bedding in bad faith. In other words, the destruction was not done with the purpose of hiding adverse evidence. In addition, Plaintiffs seem to contend that Defendants are as much to blame as Plaintiffs for the missing bedding because Defendants had the entirety of the evidence under their exclusive control during the investigation of the incident, but failed to preserve it themselves. Plaintiffs also argue that Defendants proffered instruction is contradicted by other record evidence that is not challenged, therefore, it is improper.

The Court finds that, on the present record, Defendants have not offered enough evidence of bad faith for the Court to rule that a spoliation of evidence instruction is proper. In any event, the Court cannot agree that the original instruction proffered by Defendants, which would read: "You are instructed that John Leaf was not shot in close proximity to his bed," is proportionate to the conduct and circumstances surrounding the missing bedding.

Defendants argue that Plaintiffs' bad faith is evidenced by their decision to put Mr. Leaf's position relative to the bed at the core of their case, then to destroy evidence that is obviously germane to that theory. But, as pointed out by Plaintiffs, their theory that Mr. Leaf was near the bed when he was shot is supported by other evidence in the case including Estep's testimony regarding

the layout of the bedroom, Plaintiffs' blood-splatter expert, the autopsy of Mr. Leaf's body, and the blood-splatter on the bedside table and telephone thereon. Furthermore, it is far from clear whether or not Plaintiffs ever recognized the importance of the bedding in the first place. Plaintiffs knew that the MCSD did not think the bedside table, telephone thereon or the bedding was important because the MCSD kept items from the apartment that it thought were important to their investigation, but did not keep those items. Yes, an investigator took pictures of the scene of the incident on behalf of Plaintiffs, apparently at the request of an attorney, however, that same attorney allowed the bedside table and telephone to be "scrapped." Furthermore, there is no testimony that definitively describes the "chain of custody" of the bedding from the time the MCSD turned the apartment over to the complex's management and the time the bedding was destroyed. The testimony reveals that Mr. Leaf's family thought they took the bedding into their possession when they were allowed to remove Mr. Leaf's personal effects from the apartment, but there is no clear evidence that the Leaf family or their attorney purposefully destroyed the bedding because they knew it would harm their case.

With respect to Defendants' proffered instruction, absent additional evidence of bad faith, the Court cannot agree that an instruction that informs the jury how to find a particular fact is proper when there is other evidence that could lead the jury to infer a different fact. From the Court's review of the evidence that has been presented on summary judgment and in support of the motions in limine in this cause, there is evidence other than the bedding from which the jury could reasonably infer that Mr. Leaf was in close proximity to the bed when he was shot. It is the Court's opinion that the drawing of reasonable inferences from the evidence is for the jury, not the Court. The jury may consider the missing bedding in the same way it considers all the other evidence in the case to

6

determine whether or not Plaintiffs have proven their case by a preponderance of the evidence.

Although the Court will allow this issue to remain open for further development at trial, at this stage of the litigation, the Court **DENIES** Defendants' Motion for Evidence Spoliation Instruction.

## IV.  CONCLUSION

For the reasons stated herein, the Court **DENIES** Defendants' Motion for Evidence Spoliation Instruction.

IT IS SO ORDERED this 9th day of January, 2006.

LARRY J. McKINNEY, CHIEF JUDGE
United States District Court
Southern District of Indiana

Electronically distributed to:

Kathleen Ann DeLaney
DELANEY & DELANEY LLC
kathleen@delaneylaw.net

William A. Hasbrook
RUCKELSHAUS ROLAND KAUTZMAN
   BLACKWELL & HASBROOK
wah@rucklaw.com

Laurel S. Judkins
OFFICE OF CORPORATION COUNSEL
ljudkins@indygov.org

John F. Kautzman
RUCKELSHAUS ROLAND KAUTZMAN
   BLACKWELL & HASBROOK
jfk@rucklaw.com

Andrew J. Mallon
OFFICE OF CORPORATION COUNSEL
amallon@indygov.org

Anthony W. Overholt
LOCKE REYNOLDS LLP
aoverholt@locke.com

Stephen M. Wagner
WAGNER REESE & CROSSEN LLP
swagner@injuryattorneys.com

Distributed via U.S. Postal Service to:

Janice Smith
JANICE E SMITH & ASSOCIATES
617 East Michigan Street
Indianapolis, IN 46202