UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| LARRY J. LEAF, *et al.*,<br>    Plaintiffs,<br><br>   vs.<br><br>MARION COUNTY SHERIFF<br>JACK COTTEY, *et al.*,<br>    Defendants. | )<br>)<br>)<br>)   1:02-cv-0433-LJM-VSS<br>)<br>)<br>)<br>) |

## ORDER ON DEFENDANTS' SUPPLEMENTAL
## MOTION *IN LIMINE*

This cause is now before the Court on defendants', Marion County Sheriff Jack Cottey, in his official capacity and Deputy Ronald Shelnutt ("Shelnutt"), in his personal capacity (collectively, "Defendants"), Supplemental Motion *in Limine*. The Court has already ruled *in limine* that post-shooting incidents involving Shelnutt are irrelevant and inadmissible at trial. In addition, the Court has already ruled that prior-shooting incidents involving Shelnutt are also irrelevant unless the plaintiffs', Larry J. Leaf, individually and as personal representative of the Estate of John Patrick Leaf (the "Estate"), Deceased, Martha A. Leaf, and Charmayne E. Thomas, minor child of John Patrick Leaf, by her next friend, Larry J. Leaf (collectively, "Plaintiffs"), can show that circumstances from a prior incident are sufficiently similar to the circumstances of the John Patrick Leaf ("Mr. Leaf") shooting. In the instant motion, Defendants ask the Court to address the six prior incidents Plaintiffs seek to offer evidence of at trial. Plaintiffs argue not only are all but one of the six incidents sufficiently similar, Plaintiffs also argue that several post-shooting incidents are admissible and seek reconsideration of the Court's prior ruling on those incidents as well.

For the following reasons, the Court **GRANTS** Defendants' Supplemental Motion *in Limine*.

# I. BACKGROUND

## A. BASIC FACTS OF THIS CASE

For the Court's purposes in addressing the prior- and post-shooting incidents at issue in this motion, the Court reiterates, in a condensed version, the basic facts of this case from its Order on Defendants' Motion for Summary Judgment:[1]

On May 5, 2001, Marion County Sheriff's Deputy Andrew Jacobs ("Jacobs") responded to an incomplete 911 call received at 1:10 a.m. Jacobs Dep. at 38, 84. Jacobs spoke with the 911 caller for approximately five minutes. Ryan Murphy Dep. at 49. After speaking with Murphy, Jacobs radioed that the call was regarding someone breaking the window out of a nearby apartment. *Id.* at 92. Shelnutt heard Jacobs' announcement, and decided to back up Jacobs. Shelnutt Dep. at 53. Shelnutt's understanding of the situation, while en route, was that Jacobs responded to the incomplete 911 call, and had found a broken window and open patio door. *Id.* at 55.

Shelnutt arrived at the scene at approximately 1:30 a.m. *Id.* at 53. Shelnutt and Jacobs entered the apartment within a minute or two of Shelnutt's arrival. Jacobs Dep. at 144-45. The officers did not discuss what they would do once inside the apartment. Shelnutt Dep. at 91.

Shelnutt heard a noise from the bedroom of the apartment. *Id.* at 125. He and Jacobs entered the bedroom and found a man, who turned out to be Mr. Leaf lying naked on the bed, completely uncovered, and apparently sleeping. *Id.* at 125-26; Jacobs Dep. at 165, 170. Shelnutt could see Leaf's arms and legs. Shelnutt Dep. at 125. Jacobs attempted to turn on the bedroom light, but the

---

[1] The Court does not intend for this rendition of the facts to become "the law of the case" as ultimately it will be the jury who will decide what happened, however, for purposes of ruling on this motion, the basic factual background is necessary to determine whether the other incidents proffered by Plaintiffs are sufficiently similar to warrant admission at trial.

switch did not work. Jacobs Dep. at 167. Shelnutt and Jacobs kept their tactical lights pointed at Leaf, which meant that their guns also were pointed at Leaf. *Id.* at 173-74; Shelnutt Dep. at 148. The officers did not use their lights to illuminate their uniforms or badges. Jacobs Dep. at 174. Shelnutt then attempted to clear the remaining areas of the apartment by checking the kitchen, two hall closets, a bedroom closet and a bathroom connected to the bedroom. Shelnutt Dep. at 126. As Shelnutt moved about in Leaf's apartment and bedroom, Jacobs stood at the threshold to the bedroom. *Id.*

Shelnutt stepped into the adjacent bathroom, which posed a threat because it had not yet been investigated. *Id.* at 126-27. After checking the bathroom Shelnutt believed he had checked every place where a person could be hiding. *Id.* at 127. Shelnutt then stepped out of the bathroom approximately one or two feet. *Id.* Shelnutt wondered aloud to Jacobs why Leaf would be just lying there if he had been burglarized. *Id.* Shelnutt then reached toward Leaf to try to awaken him. Jacobs Dep. at 177. Leaf suddenly sat up in bed. Shelnutt Dep. at 127.

The officers testified in their depositions that as Shelnutt reached toward Leaf, Leaf raised up from the bed with a 15-inch bowie knife and lunged at Shelnutt's midsection. *Id.* at 169; Jacobs Dep. at 34. Both officers told Leaf to drop the knife, and shouted "Sheriff's Department" or "Police." *Id.* at 177; Jacobs Dep. at 188. Leaf did not drop the knife and continued to come toward Shelnutt with the knife. Shelnutt Dep. at 178. Jacobs remembers having about eight to ten seconds to yell to Leaf to drop the knife before the shooting. Jacobs Dep. at 188. Jacobs did not feel there was time to warn that deadly force would be used. *Id.* As Shelnutt was ordering Leaf to drop the knife, Leaf continued to close in on Shelnutt with the knife. Shelnutt Dep. at 178. Shelnutt backed up, and retreated a step or two into the bathroom, but Leaf kept coming toward Shelnutt. *Id.*

3

Shelnutt fired his gun four times, hitting Leaf three times. *Id.* at 187. Less than three minutes elapsed between the time Shelnutt arrived at the apartment and the time Shelnutt shot Leaf. *Id.* at 105.

### B. BASIC FACTS OF OTHER INCIDENTS

Plaintiffs proffer the following other incidents as "evidence that Shelnutt engaged in a <u>pattern of violence and over-reaction by unreasonably believing he was being threatened by a citizen when a reasonable officer would not perceive such a threat</u>." Pls.' Opp'n Br. at 3-4 (emphasis by Plaintiffs).

| DATE | INCIDENT DESCRIPTION |
|---|---|
| 01/23/94 | Shelnutt involved in barroom fight, makes an illegal arrest of a patron, and is then suspended for 30 days. Shelnutt later denies being disciplined for this incident during his psychological evaluation.<br><br>Source: 01/28/04 MCSD Interoffice Memo, Pls.' Br. in Opp'n to Defs.' Mot. in Limine, Exh. 40 ("Pls.' Exh 40."), 01/28/04 Letter of Suspension, Pls.' Exh. 41. |
| 04/95 | Shelnutt, while an off-duty Special Deputy, pointed a gun at teenagers in a car who had the car stereo on too loud in front of his house. Shelnutt admitted to the incident but claimed that he pointed the gun at the car's tire. The teenagers were unarmed. Shelnutt was not disciplined as a result of the incident.<br><br>Source: Internal Affairs file, Pls.' Exh. 42. |

| DATE | INCIDENT DESCRIPTION |
|---|---|
| 01/31/99 | Shelnutt responds to a report of a "peeping Tom." Suspect claimed he surrendered to Shelnutt. Shelnutt claimed subject squared up as if to fight him; Shelnutt tried to hit the suspect with his asp on the left arm, but instead struck suspect on the head. Shelnutt struck suspect on left outside thigh, causing suspect to fall. Shelnutt then used mace on the suspect. The suspect was unarmed. Shelnutt was not disciplined as a result of the incident.<br><br>Source: Greg Hines Dep. & Shelnutt Dep.; MCSD Case Rep. No. 99-05739A. |
| 09/23/99 | Shelnutt responded to a disturbance, and apparently, was trying to serve a warrant, but went to wrong address. Person at the address stated that officers kicked in the door damaging door jams and pointed guns at the two apartment guests until determining that they had gone to the wrong address. Shelnutt stated that the numbers were reversed - he went to the wrong address. The two apartment guests were unarmed. Shelnutt was not disciplined as a result of the incident.<br><br>Source: MCSD Tele. Compl. Form; Case No. IA99-090, Complainant: Tamara Temple, Pls.' Exh. 50. |
| 10/08/00 | Shelnutt stuck his arm in the front door of a residence while confronting some teenagers including James Gresh; Shelnutt used vulgarity and used mace on the teenagers through the door; a supervisor arrived and no arrests are made; Shelnutt does not include the use of mace in his written report. Gresh's mother later calls MCSD to complain about Shelnutt. No phone complaint is generated. The subjects were unarmed. Shelnutt was not disciplined as a result of the incident.<br><br>Source: Lisa Gresh Dep. & Shelnutt Dep.; MCSD reports related to the incident; Pls.' Exh. 54. |
| 05/05/01 | **John Leaf shooting incident**. |
| 04/01/02 | Independent witness sees Shelnutt release his dog on a subject who the witness did not believe was resisting arrest as Shelnutt claimed. Witness hears someone say, "Don't have to feed the dog tonight." The subject was unarmed.<br><br>Source: MCSD Tele. Compl. Form; Case No. MP02-312325, Complainant: Don Dewees, Pls.' Exh. 53. |

| DATE | INCIDENT DESCRIPTION |
|---|---|
| 06/08/04 | Complainant claims Shelnutt stopped their vehicle for no reason, ordered male passenger to exit the car. Shelnutt began yelling at the passenger and shot him with a Tazer gun. Complaint for unreasonable force filed with internal affairs. Shelnutt claimed the passenger "turned on him in an aggressive manner." The passenger was unarmed.<br><br>Source: MCSD Internal Affairs Rep. #IA04-01209, Complainant: Darshie Goodwin. |
| 06/26/04 | Shelnutt pulls over a car for speeding, immediately rushes to car without waiting for backup, points what the driver believes to be a handgun at his head, pulls the driver out, pushes him to the ground, puts his knee on the driver's back, and then handcuffs the driver. The driver is later released after Shelnutt agrees to call it "even Steven." The driver filed a complaint of unreasonable force. The driver was unarmed. The internal affairs investigation found that Shelnutt violated several rules including Conduct Unbecoming an Officer. A Letter of Caution was placed in Shelnutt's file.<br><br>Source: Internal Affairs Doc., Complainant: Anthony Lusby, Pls.' Exh. 80. |

| DATE | INCIDENT DESCRIPTION |
|---|---|
| 10/23/04 | Shelnutt is involved in a dog bite incident.  On December 3, 2004, a supervisor conducts a formal counseling session with Shelnutt because Shelnutt has repeatedly left out details in his K-9 use of force reports about why force was justified.  On December 20, 2004, an even higher ranking supervisor meets with Shelnutt to discuss this same issue.  The supervisor states that the report in question "was one of many that Ron has turned into canine supervisors which [sic] has failed to articulate the reason for deployment of his dog . . . .  I have also recently received less lethal reports pertaining to tazers and impact tools where Ron could not justify the use of force . . . .  I have also been informed by other members of the canine unit that Ron periodically handles his police dog in ways that are contrary to training and tactics. . . .  This type of job requires clear judgment and the ability to justify that use of force."  The supervisor referred Shelnutt for a Fitness for Duty psychological evaluation.  That evaluation was conducted on December 29, 2004, and found that Shelnutt had nothing wrong from a psychological perspective.  The examiner found that Shelnutt "certainly did not inform me of any sense of remorse or a self-help plan to correct deficiencies . . . given his current mental status, Deputy Shelnutt's performance difficulties would appear to be best addressed by the department's policy of progressive discipline rather than as a mental health issue."<br><br>Source:  MCSD document produced on July 28, 2005. |

## II.  STANDARD

Federal Rule of Evidence 404(b) ("Rule 404(b)") governs the admissibility character evidence in the form of other "bad acts."  It states:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith.  It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Fed. R. Evid. 404(b).  The parties agree that the standards in *Treece v. Hochstetler*, 213 F.3d 360 (7th Cir. 2000), and *Soller v. Moore*, 84 F.3d 964 (7th Cir. 1996), apply to admissibility of "bad acts" evidence in this case.  *Treece* sets out the following four-pronged test:

7

> [E]vidence of prior crimes, wrongs, or acts may be admitted when:
>
>> (1) the evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged; (2) the evidence shows that the other act is similar enough and close enough in time to be relevant to the matter in issue; (3) the evidence is sufficient to support a jury finding that the defendant committed the similar act; and (4) the probative value of the evidence is not outweighed by the danger of unfair prejudice.

*Treece*, 213 F.3d at 363 (quoting *United States v. Asher*, 178 F.3d 486, 492 (7th Cir. 1999)). In considering the first prong of the test, the Seventh Circuit has ruled in prior cases that "prior 'bad acts' evidence is admissible under Rule 404(b) to demonstrate modus operandi." *Id.* (citing *United States v. Smith*, 103 F.3d 600, 603 (7th Cir. 1996)). However, such prior "bad acts" evidence must "'*bear "a singular strong resemblance to the pattern of the offense charged*."'" *Id.* (quoting *United States v. Robinson*, 161 F.3d 463, 468 (7th Cir. 1998) (quoting *United States v. Shackleford*, 738 F.2d 776, 783 (7th Cir. 1984))) (emphasis added by *Treece* court).

With respect to the fourth prong, the Court must first consider whether the other "bad act" evidence is relevant to the issue in this case—the objective reasonableness of Shelnutt's actions under the circumstances at the time Mr. Leaf was shot. *See Soller*, 84 F.3d at 968. If the Court determines it is relevant, then the Court must decide whether the evidence's probative value is substantially outweighed by the danger of unfair prejudice. *Id.*

### III. DISCUSSION

The Court notes at the outset that although Defendants collectively have brought the instant motion, the Court is directing its ruling to the Estate's claim of unreasonable force against Shelnutt, which is set for trial on Wednesday, January 18, 2006. The Court reserves judgment on this issue

8

with respect to the state claims against the Sheriff.

Defendants argue that incidents that do not involve the use of force, or even the threat of force, are too dissimilar to show modus operandi in this case. Defendants also assert that incidents that involve only the threatened use of deadly force are too dissimilar because such use of force is not actionable under the Fourth Amendment. In addition, Defendants contend that incidents that do not involve the use of deadly force do not have sufficient probative value in the balance against the danger of having the trial detour into the intricacies of the other incidents. In contrast, Plaintiffs contend that Defendants have painted too narrowly the structure for the inquiry into sufficiently similar circumstances. Plaintiffs argue that all the incidents are admissible to show that Shelnutt had the following modus operandi: violence and over-reaction when he unreasonably believed he was being threatened by a citizen when a reasonable officer would not perceive such a threat. Plaintiffs rely on *United States v. Queen*, 132 F.3d 991, 994 (4th Cir. 1997), and *United States v. Germosen*, 139 F.3d 120, 128 (2d Cir. 1998), for the propositions that Rule 404(b) is a rule of inclusion such that the Court should also consider subsequent acts.

## A. POST-SHOOTING INCIDENTS

Although the Court has addressed this issue in a prior order, Plaintiffs raised it again in their brief in opposition to the current motion, therefore, the Court will address their arguments again. The Court finds that the post-shooting incidents described above do not "bear a singular strong resemblance" to the circumstances surrounding the incident involving Mr. Leaf to show that Shelnutt's modus operandi was to use deadly force when a reasonable officer under the circumstances would not. For this reason, the Court finds the post-shooting incidents inadmissible

under Rule 404(b), and irrelevant under Rule 401, and therefore inadmissible under Rule 402. Even if the incidents were relevant under Rule 404(b), the Court finds that the probative value of the incidents are substantially outweighed by the danger of confusing the jury about the issues surrounding the reasonableness of Shelnutt's actions in this case. If the Court admits these incidents, the trial would detour into evidence about several other cases, rather than focus on the real issue: Shelnutt's actions on May 5, 2001. For those reasons, the Court reiterates its prior ruling that Plaintiffs' proffered evidence of post-shooting incidents are inadmissible. Defendants' Supplemental Motion in Limine with regard to those incidents is **GRANTED**.

### B. PRE-SHOOTING INCIDENTS

The Court reviews each of the pre-shooting incidents to determine whether the circumstances "bear a singular strong resemblance" to the circumstances of this case, whether they are close in time to the incident that occurred in this case and whether, if relevant, their probative value is substantially outweighed by the danger of unfair prejudice, confusion of issues, and considerations of delay:

The incident on January 23, 1994, is insufficiently similar to the circumstances of this case, and too far away in time to be relevant to the reasonableness of Shelnutt's actions in this case. Therefore, the incident is inadmissible pursuant to Rule 404(b). Moreover, the probative value of the evidence is strongly outweighed by the danger of a detour into the circumstances surrounding the barroom brawl. Therefore, even if the incident is relevant, it is inadmissible under Rule 403.

The incident in April 1995, when Shelnutt allegedly confronted some teenagers outside of his home with his gun, is also insufficiently similar to the circumstances of this case, and too far

away in time to be relevant to the reasonableness of Shelnutt's actions in this case. In the April 1995 incident, there is no evidence that Shelnutt was responding to a 911 call, or investigating the circumstances of a 911 call. Therefore, the incident is inadmissible pursuant to Rule 404(b).

The incident on January 31, 1999, when Shelnutt responded to a report of a "peeping Tom," is insufficiently similar to the circumstances of the instant case because it is unclear whether or not the use of an asp is comparable to the use of a gun. Moreover, because there is a question of fact on whether or not the suspect in the January 31, 1999, incident was actually threatening Shelnutt, the probative value of the incident is substantially outweighed by the danger that the jury would need to assess the facts of the January 31, 1999, incident rather than focus on the reasonableness of Shelnutt's actions under the circumstances presented to him on May 5, 2001, in Mr. Leaf's apartment. For these reasons, the January 31, 1999, incident is inadmissible pursuant to Rules 404(b) and 403.

The incident on September 23, 1999, in which Shelnutt went to the wrong address to serve a warrant, broke down the door, and held the occupants of the dwelling at gun point until he, and apparently another officer, could ascertain that they had the wrong address, is insufficiently similar to the instant case. On September 23, 1999, Shelnutt was trying to issue what he thought was a valid warrant. The exigencies of that circumstance are substantially different from the exigencies of Shelnutt's investigation of the 911 call to Mr. Leaf's apartment on May 5, 2001. In addition, there is no evidence that the September 23, 1999, incident resulted in any harm to anyone present. Furthermore, the probative value of the September 23, 1999, incident is substantially outweighed by the danger of needing to try the circumstances of the September 23, 1999, incident during the trial in this matter. For these reasons, the September 23, 1999, incident is inadmissible pursuant to Rule

404(b) and Rule 403.

The incident on October 8, 2000, in which Shelnutt stuck his hand in the front door and used mace on some teenagers is not sufficiently similar to the circumstances of this case. There is no evidence from the October 8, 2000, incident that Shelnutt tried to resort to deadly force to subdue the teenagers in question. In addition, there is no evidence of the context in which Shelnutt used mace in this instance from which the Court can conclude that the use of mace may have been unreasonable. Furthermore, in light of the sketchy evidence on the similar nature of the incident, its probative value is substantially outweighed by the danger that a mini-trial about the incident would be necessary. In such an event, the real issue in the case, whether or not Shelnutt's actions were reasonable on May 5, 2001, will be confused with the issues of the incident on October 8, 2000. For those reasons, the Court finds the incident on October 8, 2000, inadmissible pursuant to Rule 404(b) and Rule 403.

## IV.  CONCLUSION

For the foregoing reasons, defendants', Marion County Sheriff Jack Cottey, in his official capacity and Deputy Ronald Shelnutt, in his personal capacity, Supplemental Motion *in Limine* is **GRANTED**, for purposes of the trial set to start on Wednesday, January 18, 2006.

IT IS SO ORDERED this 16th day of January, 2006.

_____
LARRY J. McKINNEY, CHIEF JUDGE
United States District Court
Southern District of Indiana

Electronically distributed to:

Edward O'Donnell DeLaney
DELANEY & DELANEY LLC
ed@delaneylaw.net

Kathleen Ann DeLaney
DELANEY & DELANEY LLC
kathleen@delaneylaw.net

William A. Hasbrook
RUCKELSHAUS ROLAND KAUTZMAN BLACKWELL & HASBROOK
wah@rucklaw.com

Laurel S. Judkins
OFFICE OF CORPORATION COUNSEL
ljudkins@indygov.org

John F. Kautzman
RUCKELSHAUS ROLAND KAUTZMAN BLACKWELL & HASBROOK
jfk@rucklaw.com

Andrew J. Mallon
OFFICE OF CORPORATION COUNSEL
amallon@indygov.org

Anthony W. Overholt
LOCKE REYNOLDS LLP
aoverholt@locke.com

Stephen M. Wagner
WAGNER REESE & CROSSEN LLP
swagner@injuryattorneys.com


Distributed via U.S. Postal Service to:

Janice Smith
JANICE E SMITH & ASSOCIATES
617 East Michigan Street
Indianapolis, IN 46202